**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEVEN J. BRADY,<br>ELENA M. BRADY, | 3:14-cv-00440-RCJ-WGC |
| Plaintiffs, | **ORDER** |
| v. | |
| WELLS FARGO BANK, NA.,<br>WELLS FARGO HOME MORTGAGE,<br>WELLS FARGO & COMPANY, | |
| Defendants. | |

Before the court are Plaintiffs' Application to Proceed in Forma Pauperis (Doc. # 1)[1] and pro se Complaint (Doc. # 1-1).

## I. APPLICATION TO PROCEED IN FORMA PAUPERIS

A person may be granted permission to proceed in forma pauperis if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915; *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that this provision applies to all actions filed in forma pauperis, not just prisoner actions).

In addition, the Local Rules of Practice for the District of Nevada provide: "Any person, who is unable to prepay the fees in a civil case, may apply to the Court for authority to proceed *in forma pauperis*. The application shall be made on the form provided by the Court and shall include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"'[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some

---

[1] Refers to court's docket number.

1    particularity, definiteness and certainty.'" *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)

2    (quoting *Jefferson v. United States*, 277 F.2d 823, 725 (9th Cir. 1960)). A litigant need not "be

3    absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont De Nemours &*

4    *Co*., 335 U.S. 331, 339 (1948).

5        The court has reviewed Plaintiffs' application and it appears they are unable to pay the

6    filing fee; therefore, their application to proceed in forma pauperis (Doc. # 1) is granted.

7                     **II. SCREENING**

8   **A. Standard**

9        28 U.S.C. § 1915 provides: "the court shall dismiss the case at any time if the court

10   determines that...the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon

11   which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

12   from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). This provision applies to all actions filed in

13   forma pauperis, whether or not the plaintiff is incarcerated. *See Lopez v. Smith*, 203 F.3d 1122,

14   1129 (9th Cir. 2000) (en banc); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per

15   curiam).

16        Dismissal of a complaint for failure to state a claim upon which relief may be granted is

17   provided for in Federal Rule of Civil Procedure 12(b)(6), and this court applies the same

18   standard under Section 1915(e)(2)(B) when reviewing the adequacy of the complaint or amended

19   complaint. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted). Review

20   under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*,

21   232 F.3d 719, 723 (9th Cir. 2000).

22        In reviewing the complaint under this standard, the court must accept as true the

23   allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976),

24   construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the

25   plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Allegations in pro se

26   complaints are held to less stringent standards than formal pleadings drafted by lawyers, and

27   must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404

28   U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)). At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiffs' Complaint**

    **1. General Allegations**

Plaintiffs bring this action against defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, and Wells Fargo & Company (collectively, Wells Fargo), asserting violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. (Doc. # 1-1.) They also assert state law tort claims for invasion of privacy and negligent hiring and supervision. (*Id*.)

Plaintiffs assert that they bring this action regarding Wells Fargo's continued attempts to collect an alleged debt from Plaintiffs that Wells Fargo claims it is owed. (Doc. # 1-1 at 2 ¶ 5.) They contend that on June 26, 2014, they received a "dunning notice" from Wells Fargo's servicer which makes various claims by Wells Fargo regarding an alleged loan. (*Id*. ¶6.) This notice is attached as Exhibit A to the complaint. (Doc. # 1-1 at 9-12.) Plaintiffs contend that on June 30, 2014 and July 20, 2014, Plaintiffs served a Notice for Validation of Debt pursuant to the FDCPA, which required Wells Fargo, the "debt collectors" to validate/verify the alleged debt pursuant to 15 U.S.C. § 1692g. (*Id*. at 2 ¶ 7.)

1    Plaintiffs claim that they received a response through Wells Fargo's servicer on July 23,

2    2014, that included a copy of an alleged Adjustable Rate Mortgage Note executed with World

3    Savings Bank, FSB; however, the documentation did not identify Wells Fargo and Wells Fargo

4    did not otherwise validate that Plaintiffs owe any debt to Wells Fargo. (*Id*. ¶ 8.)

5    Plaintiffs aver that on August 19, 2014, they obtained a consumer credit report from

6    consumer credit reporting agencies Equifax and Transunion, and discovered that Wells Fargo

7    was reporting the alleged debt to the consumer credit reporting agencies. (*Id*. ¶ 9.) They claim to

8    have suffered economic harm as a result of the erroneous credit reporting and failure to validate

9    the debt. (*Id*. ¶ 10.)

10   Plaintiffs also include the following allegation: "The above detailed conduct by the

11   Defendant(s) has more to do with their deceptive and illegal acts in their attempt to collect the

12   alleged debt, as opposed to any legitimacy of their alleged debt. The FDCPA, FCRA, relates to

13   the Defendant(s) even if they were collecting a legitimate debt." (*Id*. ¶ 11.)

14   **2. FCRA Claim**

15   **a. Allegations**

16   Plaintiffs claim that Wells Fargo is a "credit furnisher" as that term is defined by the

17   FCRA, and that the FCRA, and specifically 15 U.S.C. § 1681s-2(a), prohibits furnishers from

18   reporting inaccurate or erroneous information about consumers, and places an affirmative duty

19   on furnishers to correct and update information they know, or reasonably should know is

20   inaccurate. (*Id*. at 3 ¶ 15.) The FCRA further requires furnishers to flag or otherwise provide

21   notice to credit reporting agencies of any dispute by a consumer related to his or her credit

22   information or history. (*Id*.) 15 U.S.C. § 1681s-2(b) imposes additional obligations on credit

23   furnishers which are triggered once a credit reporting agency (CRA) notifies the furnisher it has

24   received a notice of dispute from a consumer under 15 U.S.C. § 1681s-2(a)(2). (*Id*. ¶ 16.) The

25   CRA is required to forward a consumer dispute verification form to the furnisher, and the

26   furnisher is then required to verify the credit information and investigate its accuracy. (*Id*.) The

27   furnisher is likewise required to: (a) conduct an investigation regarding the disputed information;

28   (b) review all relevant information provided by the CRA; (c) report the results of the

investigation back to the CRA; (d) if the investigation finds the existing information is incomplete or inaccurate, to report back those results to the CRAs to whom the furnisher originally communicated the information about the consumer; and (e) to modify, delete, or permanently block the reporting of any item of information that is inaccurate, incomplete or which cannot be verified as accurate after a reinvestigation. (*Id*., citing 15 U.S.C. § 1681s-2(b)(1).)

Plaintiffs state that these duties are triggered when a furnisher receives notice of a dispute from a CRA, and that notice of a dispute that comes to a furnisher directly from a consumer does not trigger the duty to reinvestigate. (*Id*. ¶ 17.) Instead, the consumer must send notice of the dispute to the CRA, who in turn forwards the dispute to the furnisher. (*Id*.) Only then is the duty to investigate on the part of the furnisher triggered. (*Id*.) Plaintiffs therefore acknowledge that if a consumer sends notice of a dispute directly to the furnisher, the furnisher need not honor it (although they claim that direct notice of a dispute to the furnisher "likely" creates a legal obligation under § 1692g of the FDCPA). (*Id*.)

Plaintiffs then claim that Wells Fargo "failed to maintain, and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit report" in violation of 15 U.S.C. § 1681e(b). (*Id*. at 4 ¶ 18.) They further contend that Wells Fargo failed to conduct a proper and lawful reinvestigation. (*Id*.)

Plaintiffs maintain that Wells Fargo's conduct resulted in  multiple denials of credit. (*Id*. at 4-5 ¶ 21.) They state that the "negligent and noncompliant acts *may* have been a direct violation of 15 U.S.C. §§ 1681(n), (o)." (*Id*. at 5 ¶ 21.)

### b. Analysis

"Congress enacted the [FCRA], 15 U.S.C. §§ 1681-1681x, in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Gorman v. Wolpoff & Abramson LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)). In fact, the FCRA specifically states:

///

///

- 5 -

(a) Accuracy and fairness of credit reporting
The Congress makes the following findings:
    (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
    (2) An elaborate mechanism has been developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
    (3) [CRAs] have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
    (4) There is a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
(b) Reasonable procedures
It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681.

"[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to the [CRAs], called 'furnishers' in the statute." *Gorman*, 584 F.3d at 1153. Plaintiff alleges that Wells Fargo was a furnisher under the FCRA. The furnishers' duties can be found in 15 U.S.C. § 1681s-2. Subsection (a) of section 1681s-2 imposes a duty on furnishers to provide accurate information. It prohibits a furnisher from reporting information that the furnisher knows or has reasonable cause to belief the information is inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A). In addition, it prohibits a furnisher from furnishing information to a CRA if it has been notified by a consumer that the information is inaccurate and the information is in fact inaccurate. 15 U.S.C. § 1681s-2(a)(1)(B)(i), (ii). If the furnisher receives notice that the information furnished to a CRA is disputed by a consumer, the furnisher many not furnish the information to any CRA without notifying the CRA that the consumer disputes the information. 15 U.S.C. § 1681s-2(a)(3).

Subsection (b) of section 1681s-2 contains additional obligations on furnishers which are triggered by the receipt of notice of dispute under section 1681i(a)(2). 15 U.S.C. § 1681s-2(b)(1).

Section 1681i governs the procedure in a case of disputed accuracy. It provides:
    [I]f the completeness or accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the [CRA] directly, or indirectly through a reseller, of such dispute, the [CRA]

shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C.§ 1681i(a)(1)(A). It goes on to state: "Before the expiration of the 5-business-day period beginning on the date on which a [CRA] receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the [CRA] shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller." 15 U.S.C. § 1681i(a)(2)(A).

Thus, when a furnisher receives notice from a CRA pursuant to section 1681i(a)(2) of a dispute regarding the completeness or accuracy of information provided by the furnisher to a CRA, the furnisher is required to:

(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the [CRA];
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

15 U.S.C.§ 1681s-2(b)(1)(A)-(E).

Congress made clear that a private right of action only exists for violations of subsection (b). 15 U.S.C.§ 1681s-2(c)(1). Thus, to the extent Plaintiffs argue that Wells Fargo violated subsection (a) by providing incomplete or inaccurate information to CRAs (Doc. # 1-1 at 3 ¶ 15), they cannot state such a claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

With respect to Plaintiffs' claim that Wells Fargo violated the provisions of subsection (b), Plaintiffs acknowledge the deficiency of their claim in their Complaint. The duties in subsection (b) are triggered by the receipt of a notice of dispute *from a CRA to the furnisher*. *See* 15 U.S.C. § 1681s-2(b)(1). Plaintiffs specifically allege:

> In § 1681s-2(b) duties arise only after a furnisher receives notice of dispute from a CRA. Notice of a dispute to a furnisher by a consumer directly does not trigger a furnishers duty to reinvestigate under § 1681s-2(b). ... This indirect 'filtering' mechanism must be followed by a consumer to give rise to a duty of investigation under the FCRA to the furnisher. A furnisher need not honor a dispute received directly from a consumer, whether oral or written, under the FCRA.

(Doc. # 1-1 at 3 ¶ 17.)

Plaintiffs allege they received a notice from Wells Fargo alerting them to an alleged loan debt, and in turn, Plaintiff served on Wells Fargo a "notice for validation of debt" pursuant to the FDCPA. (Doc. # 1-1 at 2 ¶¶ 6-7.) Then, Plaintiffs received a response through Wells Fargo's servicer including a copy of a mortgage note executed with another bank (not Wells Fargo). (*Id.* ¶ 8.) Thereafter, Plaintiffs obtained a consumer credit report from two CRAs and discovered Wells Fargo was reporting this alleged debt to these CRAs. (*Id.* ¶ 9.) Nowhere do Plaintiffs include an allegation that they sent a notice of dispute to the CRAs, who in turn notified the purported furnisher, Wells Fargo, so as to trigger the duties imposed by 15 U.S.C. § 1681s-2(b).

Finally, Plaintiffs assert that Wells Fargo violated 15 U.S.C. § 1681e(b) by failing to maintain and follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit report. (Doc. # 1-1 at 4 ¶ 18.) This provision, however, is not applicable to furnishers, as Plaintiffs allege Wells Fargo to be. Instead, it is applicable to CRAs.

As a result, Plaintiffs fail to state a claim upon which relief may be granted under the FCRA against Wells Fargo. Plaintiffs shall be given an opportunity to amend their complaint, if possible, to correct the deficiencies noted herein as to their claim for relief predicated on 15 U.S.C. § 1681s-2(b).

///

///

///

### 3. FDCPA Claim

#### a. Allegations

In their general allegations, Plaintiffs aver that Wells Fargo is a "debt collector" under section 1692a(6) of the FDCPA, and were attempting to collect a debt used for a "household purpose" as defined in section 1692a(5) of the FDCPA. (Doc. # 1-1 at 2 ¶ 11, 6 ¶ 33.)

Plaintiffs claim that they served Wells Fargo with a Notice of Dispute in compliance with 15 U.S.C. § 1692g, which triggered Wells Fargo's obligation to provide Plaintiffs with verification of the alleged debt and to cease all collection activity until that was done. (Doc. # 1-1 at 6 ¶ 35.) Plaintiffs contend that Wells Fargo has provided no proof of their alleged debt and continue with their efforts to collect the debt. (*Id*.)

Plaintiffs go on to state that other *possible* violations of the FDCPA include: (A) section 1692d—engaging in conduct in connection with the collection of a debt that was harassing, oppressive or abusive; (B) section 1692e(8)—requiring debt collectors to communicate the disputed status of a debt if the debt collector knows or should know the debt is disputed; (C) section 1692e(8) and 1692j—threatening or communicating false credit information, including the failure to communicate that a debt is disputed; (D) section 1692j—using unfair or unconscionable means to collect or attempt to collect a debt; (E) section 1692f—attempting to collect an amount not authorized by the agreement creating the debt or permitted by law; and (F) section 1692f(6)—taking or threatening to unlawfully repossess or disable the consumer's property. (Doc. # 1-1 at 6-7 ¶ 36.)

Plaintiffs claim that Wells Fargo knew it was not entitled to collect the alleged debt, and that Wells Fargo knew they could not provide a contract executed by Plaintiffs which demonstrated an obligation to Wells Fargo. (*Id*. at 7 ¶¶ 37-38.) Plaintiffs assert that their consumer credit reports were damaged. (*Id*. at 7 ¶ 39.)

#### b. Analysis

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses." 15 U.S.C. § 1692(e). "In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors." *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013).

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692(5).

Under the FDCPA, a "debt collector" is: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(6). Plaintiffs' Complaint, therefore, "must plead 'factual content that allows the court to draw the reasonable inference' that Wells Fargo is a debt collector." *Schlegel*, 720 F.3d at 1208 (citing *Iqbal*, 556 U.S. at 678; *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011)).

Plaintiffs have not alleged that the principal purpose of Wells Fargo's business is the collection of debts, or that Wells Fargo regularly collects or attempts to collect debts owed or due or asserted to be owed or due to another. Instead, they merely allege that Wells Fargo attempted to collect this alleged debt from them. This allegation does not fit either requirement under the FDCPA—that a principal purpose of Wells Fargo's business is debt collection or that Wells Fargo regularly collects or attempts to collect debts owed to another.

Moreover, Plaintiffs provide no factual allegations to support the inclusion of the *"possible"* violation of sections 1692d, e(8), j, f, or f(6) of the FDCPA. They must include facts to support a plausible claim for relief under these sections.

Plaintiffs shall have an opportunity to amend their complaint to cure the noted deficiencies, if possible.

///

///

### 4. Invasion of Privacy

Plaintiffs also include a state law tort claim for invasion of privacy. (Doc. # 1-1 at 5.) Instead of including factual allegations to support a claim that Wells Fargo invaded its privacy, Plaintiffs merely assert that they should be allowed to conduct discovery to ascertain whether this occurred. (*Id. ¶ 25.*) Plaintiffs may not maintain their claim on this basis alone. Instead, they are required to allege *facts* which demonstrate a plausible claim for relief. Plaintiffs fail to state a claim on this basis; however, they shall have an opportunity to amend to cure these deficiencies.

### 5. Negligent Hiring/Supervision

Finally, Plaintiffs claim that Wells Fargo knew of and approved the conduct of its employees in attempting to collect the alleged debt, and negligently and/or intentionally hired, trained, retained or supervised incompetent debt collectors who were allowed or encouraged to violate the law. (Doc. # 1-1 at 5.)

This claim is dependent on the federal claims under the FCRA and FDCPA. Plaintiffs have not adequately alleged violations of the FCRA or FDCPA; therefore, their negligent hiring/supervision claim is likewise deficient because there is no harmful conduct to impute to Wells Fargo by virtue of its hiring, training, retention of supervision of employees. Along with the other claims, Plaintiffs shall have an opportunity to amend this claim.

### III. CONCLUSION

(1) Plaintiffs' Application to Proceed in Forma Pauperis (Doc. # 1) is **GRANTED**. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security therefor. The order granting in forma pauperis status does not extend to the issuance of subpoenas at government expense;

(2) The Clerk is instructed to **FILE** the Complaint (Doc. # 1-1); however, the Complaint shall be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**;

(3) Plaintiffs have **THIRTY DAYS FROM THE DATE OF THIS ORDER** to file an amended complaint remedying, if possible, the defects explained above. Plaintiffs are advised that pursuant to Local Rule 15-1, if they elect to file an amended complaint, it shall be complete in and of itself without reference to any previous complaint. Any allegations, parties or requests

for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court. Plaintiffs shall clear title the amended complaint as such by placing the words "AMENDED COMPLAINT" on page 1 in the caption, and shall place the case number above the words "AMENDED COMPLAINT." Plaintiffs are cautioned that if they fail to file an amended complaint within the proscribed time period, the action will be dismissed.

**IT IS SO ORDERED**.

August 25, 2014.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE